UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Georgina C. Heilman


     v.                               Civil No. 11-cv-408-JD
                                         Opinion No. 2012 DNH 008

Habitech, Inc. and D. Bruce Wheeler


O R D E R

During her bankruptcy case, Georgina Heilman brought an adversary proceeding to avoid the transfer of certain property to Habitech, Inc. and D. Bruce Wheeler, contending the transfer was fraudulent under 11 U.S.C. § 548(a). The bankruptcy court granted Heilman's claim in part and avoided the transfer of her personal property and her interest, but not her husband's interest, in their house. Heilman appealed, arguing that the entire transfer, including the transfer of her husband's interest in the house, was fraudulent and should be avoided. Habitech and Wheeler filed a cross-appeal, arguing that the transfer of the property was not fraudulent.

Background[1]

Georgina Heilman and her husband, Robert, rented a house in
Windham, New Hampshire, (the "Windham House") from 1995 until
2000.  In August of 2000, Erin, the couple's daughter, purchased
the Windham House.  The Heilmans continued to reside in the house
and paid Erin rent until February 2003, when Erin transferred the
house to the Heilmans for $1.00.  At the same time, the Heilmans
obtained a mortgage for $175,000.  Shortly thereafter, the
Heilmans began renovating the Windham House, which included
adding rooms and remodeling the kitchen.  In the spring of 2005,
the Heilmans obtained an $80,000 home equity line of credit.  A
few months later, they added a two-car garage with a bedroom to
the Windham House.  Beginning in January of 2000 and continuing
throughout the Heilmans' purchase and improvements of the Windham
House, Robert was employed by Habitech.

In the fall of 2007, Habitech discovered that Robert had
been embezzling funds from the company for several years.  In
total, Robert embezzled between $700,000 and $1.1 million during
his employment with the company.  On October 12, 2007, D. Bruce
Wheeler, the co-founder and principal of Habitech, along with an

---

[1]The background facts are taken from the parties' briefs and
the record submitted on appeal, including the transcript of the
bankruptcy court's "findings of fact" set forth on May 26, 2011.

outside accountant and a private investigator, confronted Robert about the embezzlement.  Robert admitted to embezzling an undisclosed amount of money over several years.  Wheeler then asked Robert to transfer to Habitech the deed to the Windham House, as well as some of the Heilmans' personal property, as partial repayment of the embezzled funds.

Robert called Georgina that same day, and made arrangements to meet her at the Windham House later that evening.  Georgina arrived home from work that night after 11:00 p.m., to find Robert, Wheeler, and the others waiting for her.  Wheeler insinuated that Georgina's cooperation would be helpful in terms of Robert's potential criminal liability and both of their continuing health coverage.  Wheeler and the others also gave Georgina the impression that they would not leave until the Heilmans transferred their property to Habitech.  That night, Georgina signed a Quitclaim Deed and a document titled "Transfer of all Property."  Both documents were executed in the Windham House and signed by a notary public.

Habitech represents that the "Transfer of all Property" document purported to transfer to Habitech "[a]ll of the property owned by [the Heilmans] . . . real and personal, tangible and intangible, contingent and non-contingent, including but expressly not limited to, all of the furnishings and other

3

contents in the [Windham House]." Wheeler took a computer and several pieces of Georgina's jewelry that night, and Georgina delivered an additional piece of jewelry to him a few days later. Georgina was not implicated in, and had no knowledge of, Robert's embezzlement, and had no liability to Habitech.

On or about January 14, 2008, Georgina filed for bankruptcy under Chapter 13 of the Bankruptcy Code. On or about April 2, 2008, Georgina filed a complaint against Habitech and Wheeler (hereinafter, "Habitech"), seeking to avoid her transfer of property that she made on October 12, 2007, on the ground that it was a fraudulent transfer. Robert, who is currently incarcerated, moved to intervene shortly before the adversary proceeding was set to begin. The bankruptcy court denied the motion.

After a hearing, the bankruptcy court entered judgment in favor of Georgina on the fraudulent transfer claim and avoided the transfer of her personal property and furnishings, as well as her interest in the Windham House. This appeal and cross-appeal followed.

<u>Standard of Review</u>

This court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. <u>See</u> 28

U.S.C. § 158(a); see also L.R. 77.4(c).  The court conducts a de
novo review of legal determinations of the bankruptcy court, In
re Gonic Realty Trust, 909 F.2d 624, 626 (1st Cir. 1990), but
will not reverse the bankruptcy court's factual findings unless
clearly erroneous, Briden v. Foley, 776 F.2d 379, 381 (1st Cir.
1985).  A factual finding "is clearly erroneous when[,] although
there is evidence to support it, the reviewing court on the
entire evidence is left with the definite and firm conviction
that a mistake has been committed."  Anderson v. City of Bessemer
City, 470 U.S. 564, 573 (1985) (internal quotation marks and
citation omitted).

<u>Discussion</u>

Heilman appeals part of the bankruptcy court's order,
arguing that the court's decision avoiding the transfer of her
interest in the Windham House applies, or should apply, to the
transfer of the Windham House in its entirety, not just to her
interest in the house.  Habitech cross-appeals, arguing that the
transfer of Heilman's property, including her interest in the
Windham House, was not fraudulent.

Although the parties did not address the issue, the court
notes that § 548 authorizes a bankruptcy trustee to avoid a
debtor's fraudulent transfer.  Based on the language of the

statute, Heilman, as the debtor, would not have standing to avoid a transfer under § 548.  Habitech moved to dismiss the adversary proceeding on this ground.  The bankruptcy court denied the motion, but the parties did not provide the court with a copy of the bankruptcy court's decision.

11 U.S.C. § 522(h) gives a Chapter 13 debtor standing to avoid a fraudulent transfer under § 548 if certain conditions are met.  See, e.g., In re Dickson, 655 F.3d 585, 592 (6th Cir. 2011).  The court is unable to determine, based on the appellate record, whether Heilman meets those conditions.  Because Habitech did not raise the issue on appeal, the court will assume, without deciding, that Heilman has standing to avoid the transfer of her interest in the property under § 522(h).

A.   <u>Heilman's Appeal</u>

Heilman does not contest the bankruptcy court's factual findings or legal rulings.  She contends that the bankruptcy court's determination that the transfer of her interest in the Windham House was fraudulent under § 548 applies with equal force to the transfer of her husband's interest in the house. Alternatively, Heilman contends that because she and her husband held the house as tenants in the entirety, her interest is 100% of the house.

1.  <u>Interest of the Debtor</u>

Section 548 provides in pertinent part that a bankruptcy trustee "may avoid any transfer . . . of an interest of the debtor in property" if the transfer was fraudulent.  Heilman is the debtor in the Chapter 13 proceeding, but Robert is not a debtor in that proceeding.  The bankruptcy court denied Robert's motion to intervene in the adversary proceeding, stating,

> [W]e're addressing [Georgina's] interest in the property at stake, and any ruling that I make is going to address her interests in the property, either in terms of property that's identified as 100 per cent [sic] hers potentially, or a partial ownership interest in the property.  I would be -- it would be inappropriate, since we've set this for trial and are going forward now -- to grant an intervenor status with the notion that we were going to rule definitively with regard to any of [Robert's] interests in the property, because he's not here to participate.

Because Robert is not a debtor, § 548 does not apply to his interest in the Windham House.  The bankruptcy court properly did not make any ruling with respect to Robert's interest in the house.  Therefore, the bankruptcy court's decision to avoid the transfer of Georgina's interest in the house does not apply to Robert's interest.


2.  <u>Joint Tenants in the Entirety</u>

Heilman also argues that her interest in the Windham House was 100% because she and Robert held the house as tenants in the

7

entirety.  Therefore, she contends, the transfer of the entire house should be set aside as fraudulent.  Heilman's property interests in the Windham House on the date of the transfer is a matter of state law.  <u>Butner v. United States</u>, 440 U.S. 48, 54 (1979).

A tenancy in the entirety gives each tenant a 100% interest in the property.  <u>See</u> <u>In re Snyder</u>, 249 B.R. 40, 46 (B.A.P. 1st Cir. 2000).  New Hampshire, however, does not recognize the ownership form of tenancy in the entirety.  <u>See</u> <u>Estate of Croteau v. Croteau</u>, 143 N.H. 177, 180 (1998); <u>see also</u> <u>Boissonnault v. Savage</u>, 137 N.H. 229, 231 (1993).  New Hampshire law provides that every conveyance of real estate made to two or more persons creates an estate in common or, if otherwise provided in the conveying deed, a joint tenancy.  <u>See</u> Revised Statutes Annotated ("RSA") 477:18.  Neither a tenant in common nor a joint tenant holds a 100% interest in the property.  <u>See</u> <u>Land Am. Commonwealth Title Ins. Co. v. Kolozetski</u>, 159 N.H. 689, 692 (2010) (joint tenant holds an undivided one-half interest in property); <u>see also</u> <u>Walshire v. United States</u>, 288 F.3d 342, 348 (8th Cir. 2002) (tenants in common hold a property "in equal or unequal undivided shares") (quoting Black's Law Dictionary 1478 (17th ed. 1999)).

The Quitclaim Deed by which the Heilmans obtained the Windham House conveyed the house to them "as tenants by the

Entirety."  Under New Hampshire law, such language creates a
joint tenancy.  <u>See</u> RSA 477:18 ("The addition, following the
names of the grantees in the granting clause of a deed or devise,
of the words . . . 'as tenants by the entirety' shall constitute
a clear expression to create a joint tenancy.").  Therefore,
Heilman held the Windham House as a joint tenant with her husband
and did not have a 100% interest in the house.

Accordingly, the bankruptcy court's order avoiding the
October 12, 2007, transfer of the Windham House applies to only
Georgina's interest in the house, and not to Robert's.  Because
Georgina's interest in the Windham House was less than 100%, the
bankruptcy court's order does not require avoidance of the entire
transfer.

B.    <u>Habitech's Appeal</u>

Habitech appeals the bankruptcy court's decision that
Heilman's transfer of her interest in the Windham House was
fraudulent.  In support, Habitech contends that the bankruptcy
court found that Heilman failed to meet the requirements of a
fraudulent transfer.

"A transaction may be avoided as a constructively fraudulent
transfer under federal bankruptcy law if it is proved that (1)
the debtor had an interest in the property transferred; (2) the

transfer occurred within one year of the petition date; (3) the
debtor was insolvent at the time of the transfer or became
insolvent as a result of it; and (4) the debtor received less
than reasonably equivalent value in exchange for the transfer."
In re Jackson, 318 B.R. 5, 23 (Bankr. D.N.H. 2004) (internal
quotation marks and citation omitted).  Habitech argues that it
held a constructive trust on the Windham House at the time of the
transfer, and that, therefore, Heilman did not have an interest
in the house to transfer.  Further, Habitech argues that even if
Heilman did have an interest in the house, she received
reasonably equivalent value for her transfer of all of her
property, including her interest in the house.


    1.   <u>Heilman's Interest in the Windham House</u>

    Habitech argues that it held the Windham House in a
constructive trust at the time of the transfer because the house
was purchased and renovated with funds Robert embezzled from
Habitech.  Based on its theory that it owned the house through a
constructive trust, Habitech contends that Heilman cannot show
that she had any interest in the house at the time of the
transfer.  Habitech asserts that the bankruptcy court erred in
concluding that Heilman had an interest in the house for purposes
of avoiding the transfer.

In the context of a bankruptcy proceeding, a party asserting a right to property based on a constructive trust must establish the elements of a constructive trust under state law and also trace the trust funds to the property.  See In re Chew, 496 F.3d 11, 17 n.8 (1st Cir. 2007); Conn. Gen. Life Ins. Co. v. Univ. Ins. Co., 838 F.2d 612, 618-19 (1st Cir. 1988).  The bankruptcy court did not address the elements of a constructive trust under New Hampshire law, and Habitech does not raise an issue with respect to those elements on appeal.  Instead, the bankruptcy court concluded that Habitech failed to trace adequately the embezzled funds to the Windham House.  Habitech argues that the bankruptcy court's factual findings do not support the conclusion.

When funds subject to a constructive trust have been commingled with other property of the debtor, the party asserting rights as a trust beneficiary bears the burden of sufficiently tracing the trust funds to the property.  Conn. Gen. Life, 838 F.2d at 618-19; see also In re Fin. Res. Mortg., Inc., 454 B.R. 6, 17 (Bankr. D.N.H. 2011).  It is insufficient to show that the trustee of the constructive trust was enriched by the funds or that the funds generally added to the value of the trustee's estate.  Conn. Gen. Life, 838 F.2d at 619.  Instead, the trust funds "must be clearly traced and identified in specific

11

property."  Id. (internal quotation marks omitted); see also In re DeSteph, 2010 WL 2206983, at *11 (Bankr. D.N.H. May 26, 2010) (tracing requirement was not satisfied because plaintiff could not directly trace a down payment on a condominium back to embezzled funds as opposed to the debtor's own money).  This is so because "the constructive trust encumbers the property only to the extent of the funds traceable from the alleged fraud."  In re Chew, 496 F.3d at 16 n.5 ; see also Restatement (Second) of Trusts § 202, comment h (2011) (When trust property has been mingled with the trustee's personal property, a constructive trust may be enforced on the mingled property "in such proportion as the trust property so mingled bears to the whole of the mingled property.").

The bankruptcy court noted that Habitech's constructive trust theory was an "after-the-fact rationalization[] of value for what was transferred."  The court also noted that Habitech did not have a pre-petition judgment that established a

constructive trust.[2]  Instead, Habitech was asserting the
constructive trust theory in the bankruptcy proceeding.

Pertinent to the constructive trust theory, the bankruptcy
court found that "[t]hrough the course of [Robert's]
embezzlement[,] the funds that he took wrongfully from Habitech
found their way into purchase and improvements to real estate,
into vacations, into -- into some other acquisitions."  The
bankruptcy court also found that the Heilmans' legitimate
earnings were less than the amount of their expenditures during
the period when Robert was embezzling funds from Habitech.
Nevertheless, the court found that Georgina did not know about
the money Robert embezzled.  The court concluded that Habitech
did not trace adequately the embezzled funds to the house.

Contrary to Habitech's argument on appeal, the bankruptcy
court did not find that the Heilmans paid for the Windham House
and the renovations with embezzled funds.  At most, the court

---

[2]Habitech argues that the bankruptcy court erred by ruling
that a constructive trust had to have been in place by judgment
before the bankruptcy is filed.  Habitech is correct to the
extent that under New Hampshire law, "[a] constructive trust
arises at the time of the occurrence of the events giving rise to
the duty to reconvey the property."  Curtis Mfg. Co., Inc. v.
Plasti-Clip Corp., 933 F. Supp. 94, 106 (D.N.H. 1995) (internal
quotation marks and citation omitted).  The bankruptcy court,
however, stated only that absent a prior judgment of a
constructive trust, Habitech is in the position of an unsecured
creditor and must demonstrate to the court the existence of a
constructive trust.

found that the embezzled funds were commingled with the Heilmans'
earnings and that together the funds and earnings paid for the
Heilmans' home, vacations, and other expenses.  A finding of
commingled funds puts the burden on Habitech to clearly trace the
embezzled funds to the house, which the bankruptcy court found
Habitech failed to do.  Habitech has not shown that the
bankruptcy court's conclusion was based on clearly erroneous
factual findings or on a legal error.

> 2.   <u>Reasonably Equivalent Value</u>

Habitech argues that even if Heilman's interest in the
Windham House was free from a constructive trust, the transfer of
all of Heilman's property, including her interest in the Windham
House, was not fraudulent.  Habitech contends that Heilman
received reasonably equivalent value for the transfer.

"Determination of reasonably equivalent value under §
548(a)(1)(B) is a two-step process.  The Court must first
determine whether the debtor received value, and then examine
whether the value is reasonably equivalent to what the debtor
gave."  <u>In re Feeley</u>, 429 B.R. 56, 63 (Bankr. D. Mass. 2010)
(internal citation omitted); <u>see also</u> <u>In re Nat'l Envtl. Sys.
Corp.</u>, 111 B.R. 4, 12 (Bankr. D.N.H. 1989).  The determination of
whether consideration is reasonably equivalent value is a

question of fact.  See In re Roco Corp., 701 F.2d 978, 981-82
(1st Cir. 1983); see also 5 Collier on Bankruptcy ¶ 548.05 (15th
ed. rev. 2005) ("Whether the transfer is for a reasonably
equivalent value in every case is largely a question of fact, as
to which considerable latitude must be allowed to the trier of
facts.").  "[A] reasonably equivalent value determination should
be based on all of the facts and circumstances of the case."  In
re Feeley, 429 B.R. at 63 (internal citation omitted).

Here, the bankruptcy court determined that Heilman did not
receive fair or adequate consideration for the transfer of her
property and, therefore, did not receive reasonably equivalent
value.  Habitech asserts that the bankruptcy court erred because
embezzled funds were used to pay for the purchase and renovations
of the Windham House, and therefore, the transfer to Habitech
merely offset the value of the embezzled funds.

As discussed above, Habitech failed to trace adequately the
embezzled funds to the purchase and specific improvements to the
Windham House.  Therefore, Habitech cannot claim that the
transfer of Heilman's interest back to Habitech is an offset of
the value of the embezzled funds.

Habitech further argues that the transfer of all of
Heilman's property was the satisfaction of an antecedent debt and
therefore, should be considered reasonably equivalent value.  The

15

bankruptcy court found, however, that Heilman did not have any liability to Habitech and thus, did not have an antecedent debt to repay.  Whether Robert had an antecedent debt is irrelevant, as "the payment of another's debt is held to be a transfer without fair consideration."  In re Gerdes, 246 B.R. 311, 313 (Bankr. S.D. Oh. 2000) (quoting In re B-F Bldg. Corp., 312 F.2d 691, 694 (6th Cir. 1963)).  Therefore, the bankruptcy court's determination that Heilman did not receive reasonably equivalent value for the transfer of her property to Habitech was not clearly erroneous or a legal error.

<u>Conclusion</u>

For the foregoing reasons, the bankruptcy court's decision of June 28, 2011, is affirmed.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

January 11, 2012

cc:  Jennifer Turco Beaudet, Esquire
     Eleanor Wm. Dahar, Esquire
     Geraldine L. Karonis, Esquire
     Thomas J. Pappas, Esquire
     Lawrence P. Sumski, Esquire